IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

HUBERT EDWARD PUGH,

    Petitioner,

v.                                                                                              No. 1:18-cv-01134-JDB-jay
                                                                                               Re: 1:16-cr-10068-JDB-1

UNITED STATES OF AMERICA,

    Respondent.


ORDER DENYING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Hubert Edward Pugh,[1] has filed a pro se motion to vacate, set aside, or correct his sentence (the "Petition"), pursuant to 28 U.S.C. § 2255.  (Docket Entry ("D.E.") 1.)  For the following reasons, the Petition is DENIED.

BACKGROUND

In June 2016, a federal grand jury for the Western District of Tennessee returned a two-count indictment charging Pugh and others with conspiracy to distribute and possess with the intent to distribute fifty grams or more of actual methamphetamine (Count 1), and distribution, attempt to distribute, and possession with intent to distribute fifty grams or more of actual methamphetamine (Count 2).  (*United States v Pugh*, No. 1:16-cr-10068-JDB-1 (W.D. Tenn.) ("No. 1:16-cr-10068-JDB-1"), D.E. 2.)  The counts alleged violations of 21 U.S.C. §§ 841(a) and

---

[1] The Court will refer to Pugh as the "Defendant" in its discussion of the underlying criminal matter.

846. A superseding indictment was filed on April 17, 2017, that retained the same charges as to Pugh, but added a new co-defendant. (*Id.*, D.E. 178.)

On November 1, 2017, the Defendant pleaded guilty to Count 1 pursuant to a plea agreement with the Government. (*Id.*, D.E. 226-27.) The sentence agreed upon by the parties was 140 months' incarceration and five years of supervised release.

In anticipation of sentencing, the United States Probation Office prepared the presentence report (the "PSR"). The PSR calculated a base offense level of 34 pursuant to § 2D1.1(c)(3) of the United States Sentencing Commission *Guidelines Manual* (the "Guidelines" or "U.S.S.G."). Two levels were added because the Defendant possessed "a dangerous weapon." (*Id.* ¶ 76 (applying U.S.S.G. § 2D1.1(b)(1).) Four points were applied for Pugh's leadership role in the offense and three points were deducted for his acceptance of responsibility. "Based upon a total offense level of 37 and a criminal history category of VI, the guideline imprisonment range [was] 360 months to life." (*Id.* ¶ 158 (bolding omitted).) Defense counsel, Lloyd R. Tatum, filed a position paper asserting in part that the Defendant "denies the facts described in [paragraphs] 13 through 73" of the PSR. (No. 1:16-cr-10068-JDB-1, D.E. 233 at PageID 372.)

A sentencing hearing was held on February 1, 2018. (*Id.*, D.E. 235.) The Government asked the Court to accept the parties' agreed sentence of 140 months, advising that it "would forgo the two level enhancement for the gun and also [the four points] for the leadership role for Mr. Pugh." (*Id.*, D.E. 241 at PageID 449.) "[T]he advisory guideline range" resulting from the Government's decision "not . . . to present proof" on the enhancements was "130 and 162 months." (*Id.*, D.E. 241 at PageID 453-54.) Defense counsel withdrew the objections to the PSR and argued that the 140-month sentence agreed to by the parties was warranted under the circumstances.

2

Counsel emphasized "that in 14 years, Mr. Pugh is going to be close to seventy by the time he gets out of Federal sentence." (*Id.*, D.E. 241 at PageID 449.) The undersigned accepted the plea agreement and sentenced Pugh to 140 months' incarceration and five years of supervised release. The Defendant did not take a direct appeal.

## DISCUSSION

The inmate asserts herein that counsel rendered ineffective assistance by failing to submit evidence to refute an allegation by a confidential informant, as recited in Paragraph 14 of the PSR, that he was a "hit-man." (D.E. 1-1 at PageID 18.) He maintains that counsel's conduct has "adversely affect[ed]" him in two ways. (D.E. 1 at PageID 4.) First, he posits that counsel's failure to have the allegation stricken has caused the federal prison authorities to place him in "High Security" facilities (Claim 1). (D.E. 1-1 at PageID 17.) Second, he submits that counsel's conduct may have resulted in a higher sentence (Claim 2).

The Government responded to the Petition (D.E. 16), arguing that Claim 1 is non-cognizable and Claim 2 is devoid of merit.[2] In support of its position on Claim 2, Respondent submitted the sworn declaration of defense counsel. (D.E. 16-1.) Petitioner did not file a reply to the response or to counsel's assertions, although he was permitted to do so

I.   Legal Standards.

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

---

[2]The Government also avers that Petitioner waived his right to bring his claims. Because there are ample alternative grounds for denying the claims, the Court declines to address the waiver issue.

3

>the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

A prisoner seeking relief under § 2255 "must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required," however, "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* A petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel alleges an error of constitutional magnitude cognizable in a § 2255 proceeding. *See id.* Such a claim is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 966. To succeed on an ineffective-assistance claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).  An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91.  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693).  Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

II.  Claim I.

Pugh asserts that "[c]ounsel was ineffective for failing to object to erroneous prior violent conduct listed in the Presentence Report, conduct that was never v[e]rified by the Court, and which

5

is being used adversely against [him] by the Federal Bureau of Prisons to increase his Custody Classification score to High Custody Levels." (D.E. 1-1 at PageID 16.) The alleged untrue statement, as set forth in Paragraph 14, reads as follows: "CI1 informed the investigators that Hubert Edward Pugh was a 'hitman' and might have been responsible for killing a couple of people." (PSR ¶ 14 (bolding omitted).) For relief, movant asks the Court to "order the Probation Department to delete the[] statements [from Paragraph 14] out of the Presentence Report and send the Bureau of Prison[s] a redacted copy so that [his] 'History of Violence' score can be corrected to accurately reflect his history of violence." (D.E. 1-1 at PageID 20-21.) The Government argues the claim is not cognizable under § 2255. The Court agrees.

As indicated earlier, § 2255 provides that a prisoner who "claim[s] the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In the present matter, Petitioner does not predicate Claim 1 on a right to be released from custody. Rather, he seeks a correction of the PSR and reclassification of his custody level by the Bureau of Prisons. Accordingly, the claim is not cognizable in this § 2255 proceeding. *See United States v. Casey*, Case No. 1:06CR00071, 2020 WL 4049989, at *4 (W.D. Va. July 20, 2020) (petitioner did "not allege a constitutional violation or any other cognizable ground for relief under § 2255" where she asserted that counsel's failure at sentencing "to advocate for her as a person with disabilities . . . severely hindered her health classification and medical care in the federal Bureau of Prisons"); *Johnson v. United States*, Nos. 3:11-cv-345-FDW, 3:07-cr-173-FDW, 2012 WL 6642085, at *3 (W.D.N.C. Dec. 20, 2012) (rejecting as non-cognizable petitioner's claim that an "erroneous description" in the presentence report caused prison authorities to "mis-classif[y] his security and custody level"; prisoner did not assert "a right to be released," but only

6

sought an order directing "the probation officer [to] amend the presentence report in the hopes that it [would] allow the Bureau of Prisons to reclassify Petitioner and assign him to a different facility"). Claim 1 is therefore DENIED.

III.    Claim 2.

As he does in Claim 1, Petitioner insists in Claim 2 that counsel rendered ineffective assistance by failing to do more to challenge the contents of Paragraph 14. However, his allegation of prejudice in Claim 2 relates to the length of his sentence, not to the level of custody assigned to him by prison authorities. Specifically, he contends that the "statements [in Paragraph 14] may have influenced the Court regarding his sentence" (D.E. 1 at PageID 5) and requests that the Court "reduce [his] sentence accordingly" (*id.* at PageID 12). The claim is cognizable in this § 2255 proceeding. *See, e.g.*, *Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014) (addressing on the merits § 2255 petitioner's claim that "he would have . . . received a lower sentence but for the ineffective assistance of his second attorney"). Nevertheless, it is untenable.[3]

In his sworn declaration, counsel explains that the position paper he filed in response to the PSR "denied that the contents of . . . paragraph [14] were true." (D.E. 16-1 ¶ 6.) However, he "did not seek to have the allegation stricken," because there "was an agreed-upon sentence of 140 months," and "the contents of the PSR were not going to affect how long Mr. Pugh was going to be incarcerated[.]" (*Id.* ¶¶ 6-7.)

The inmate cannot show that counsel performed deficiently. Counsel's decision to forgo an effort to have the "hitman" allegation stricken is presumed to be reasonable, *see Strickland*, 466

---

[3] There is no factual dispute as to Claim 2 that would require an evidentiary hearing.

7

U.S. at 689, and Petitioner has not offered any specific factual allegations to rebut the presumption. In the end, the totality of counsel's efforts secured for Pugh a considerable reduction in his potential sentence.

Petitioner also cannot demonstrate that he was prejudiced by counsel's conduct. As discussed herein, he speculates that his sentence might have been shorter had counsel done more to refute Paragraph 14. However, given the parties' agreement, the statements of the attorneys at sentencing, the entirety of the PSR, the advisory Guidelines, and the 18 U.S.C. § 3553(a) sentencing factors, there is no reasonable probability that the undersigned would have imposed a sentence below 140 months. Because Pugh has not met either prong of *Strickland*'s test, Claim 2 is without merit and is DENIED.

For these reasons, the Petition is DENIED.

## APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

8


debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[4]

IT IS SO ORDERED this 26th day of July 2021.

    s/ J. DANIEL BREEN
    UNITED STATES DISTRICT JUDGE

---

[4] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.